The document below is hereby signed.  Dated:
September 26, 2008.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
ARTHUR J. HOROWITZ,            )        Case No. 08-00211
                               )        (Chapter 13)
                Debtor.        )

MEMORANDUM DECISION AND INTERIM ORDER RE CLAIM OF GMAC

This addresses the debtor's objection to the proof of claim
of GMAC.  Although a proof of claim is entitled to a presumption
of prima facie correctness, the attachments to GMAC's proof of
claim, together with the court record, establish that the debtor
owes far less than the amount claimed.

I

The claim acknowledges that the debtor was current on his
lease payments when the case was filed.  In addition, the lease
agreement provided that the debtor could end the lease at
anytime.  The debtor opted to surrender the vehicle prepetition.
A consent order granting relief from the automatic stay to permit
GMAC to sell the automobile was entered on May 21, 2008.

The proof of claim of GMAC recites that $19,061.68 is the
balance of postpetition lease payments owed by the debtor,

calculated over the remaining life of the lease.  The proof of

claim then states that including a lease buyout option, the total

amount owed is $34,280.21.  It indicates that the $34,280.21

figure "includes the purchase option at the end of the lease,

plus remaining lease payments and any unpaid or accrued charges,

minus any unearned lease charges and any sales tax associated

with remaining unpaid monthly lease payments."  But the debtor

opted to surrender the car, and the amounts attributable to the

lease buyout option are not applicable.

> The lease agreement provided:
>
> 37.  WHAT YOU OWE AT EARLY END.  In general, unless gap
> protection applies, you will owe us any unpaid monthly
> payments.  We will give you a credit for any unearned
> rent charge and a credit if we sell the vehicle for
> more than residual value.  We will use the actuarial
> method to figure the unearned rent charge.  (You may
> ask us for a written explanation of the actuarial
> method.)  We will treat the rent charge for each
> monthly period as fully earned on the period's first
> day.  We will treat each monthly payment that you made
> as if we received it on its due date.

The lease's "gap protection" provisions dealt with what was to

occur if the vehicle was destroyed (became total loss), and thus

have no applicability here.[1]  In determining the surplus over the residual value, the debtor could have opted to obtain an appraisal (meeting certain standards) as to the **wholesale value** of the vehicle, but the debtor does not allege that he obtained such an appraisal.  In the absence of such an appraisal, the surplus would be determined by the amount received on a sale of the vehicle at wholesale.

I read the proof of claim itself as establishing that the debtor is entitled to two types of credits.

A.   Credit For Excess Over Residual Value Obtained on
     Sale of Vehicle

The residual value (the estimated value of the vehicle at the originally scheduled end of the lease) was set by the lease at $19,390.25.  The agreed value at the commencement of the lease on November 4, 2006, was $35,749.00, which is $16,358.75 more than the residual value.  That $35,749.00 figure is likely a retail value, not a wholesale value.  A sale of the vehicle

---

[1]  The lease agreement repeats what is owed at an early end (on the facts of this case) by stating that if the vehicle is not a total loss (which it was not in this case), the debtor would owe at an early end the result of:

|  | The base monthly payment times the number of payments not yet due, |
|---|---|
| [minus] | Any unearned rent charge, figured by the actuarial method, |
| [minus] | Any surplus [over the residual value] on the vehicle sale, |
| [plus] | If there is no surplus, any Early Excess Mileage and Wear Charge . . . plus any tax. |

sometime after May 21, 2008, at wholesale (more than a year and a

half after the lease was entered into) might or might not yield a

surplus over the residual value of $19,390.25.  GMAC has failed

to respond to the objection to claim and to state what amount was

realized on a sale of the vehicle, and I address that failure in

part II, below.

    B.  <u>Other Credits</u>

The proof of claim necessarily establishes that there were

other credits to which the debtor was entitled.  As already

noted, the remaining monthly payments on the lease total

$19,061.68, and GMAC calculated a total claim owed of $34,280.21,

which included the cost of the debtor's purchasing the vehicle at

the end of the lease.  The proof of claim should have been for

$14,889.96, the total claim of $34,280.21 with the $19,390.25

purchase-at-end-of-lease amount eliminated as a component of the

claim.[2]  In other words, GMAC must have included $4,171.72 in net

credits in its proof of claim to apply against the $19,061.68 in

---

    [2]  That $14,889.96 figure can also be derived in the
following way.  The difference between the $19,061.68 in monthly
payments and the total claim of $34,280.21 is $15,218.53.  Under
the lease, $19,390.25 was the required amount to be paid to
purchase the vehicle at the end of the lease.  Accordingly, the
sum of the remaining monthly payments of $19,061.68 and the
$19,390.25 purchase price at the end of the lease total
$38,451.93.  That is $4,171.72 less than the total claim amount
of $34,280.21.  Accordingly, GMAC's proof of claim must include
$4,171.72 in credits to which the debtor was entitled.  It
follows that the correct amount of the proof of claim should have
been $19,061.68 less a credit of $4,171.72, for a net amount owed
of $14,889.96.

unpaid monthly lease payments.

                                II

     The debtor's objection to GMAC's proof of claim recites

that:

          As of this date GMAC has not advised the Court
          regarding the status of its claim--whether or not it
          has disposed of the vehicle or if a deficiency balance
          is claimed.  Their claim #6 was filed 4/11/08 which
          requests full payment of the outstanding debt totaling
          $34,280.21 without deduction for proceeds received from
          sale or transfer of the automobile. According to the
          NADA book the vehicle has a present retail value of
          $24,525.00.

The debtor appears to contend that the proof of claim should be

reduced by the entire amount of the sale proceeds received.  But

the lease agreement provided for a credit in the amount of the

excess over the residual value of the vehicle, not for a credit

for the full amount of the sale proceeds.  Moreover, the lease

provided for the vehicle to be sold at wholesale.  Accordingly,

the debtor's reliance upon NADA retail values is misplaced.

Finally, even if GMAC sold the vehicle **at wholesale** for

$24,525.00 (which would be unlikely because that is the NADA

**retail value figure**), the resulting surplus over the $19,390.25

residual value would come to only $5,134.75.  That credit would

not eliminate the $14,889.96 otherwise owed: it would reduce the

claim to $9,755.21.

     Nevertheless, the debtor's objection raises a forceful

point: GMAC has failed to report what amount was received on a

sale of the vehicle by GMAC.  As already noted, a properly

documented proof of claim is prima facie correct.  But the

debtor--and the trustee and the court--are entitled to be advised

by a creditor of any postpetition event that results in a

reduction of the proof of claim.  A creditor is not entitled to

keep other parties in the dark regarding a sale that may have

resulted in a reduction of the amount owed on its claim.  It

cannot hide behind a wall of unresponsiveness and expect to avoid

the debtor's obtaining the benefit of a reduction of the amount

of the claim.

On the other hand, the debtor has not shown that the vehicle

likely could be sold **at wholesale** for an amount exceeding the

residual value of $19,390.25, and GMAC has not been warned that

it must report what was received on a sale of the vehicle lest

its proof of claim be reduced for failure to make a report.

Accordingly, at this juncture it would be inappropriate to reduce

the claim.  The court will direct GMAC to file a report regarding

what the vehicle fetched on sale (which may be made by filing an

amended proof of claim making such a report so that an attorney

need not file a report on GMAC's behalf), and direct that if no

such report is filed, the debtor shall be entitled to obtain a

reduction in the amount of the claim based on the most favorable

evidence of wholesale value as of May 21, 2008, that the debtor

can produce.[3]

                                III

     In light of the foregoing, it is

     ORDERED that the proof of claim of GMAC is disallowed to the

extent that it exceeds $14,889.96.   It is further

     ORDERED that the proof of claim of GMAC will be reduced

further to take account of any surplus over the $19,390.25

residual value of the vehicle realized by a sale (or estimated to

be received on a sale at wholesale if GMAC fails to file a report

as to the amount received on a sale of the vehicle).   It is

further

     ORDERED that by October 15, 2008, GMAC shall file a report

regarding the amount received on a sale of the vehicle (and the

report may be made by filing an amended proof of claim, or may be

made via an attorney's filing a report).   It is further

     ORDERED that if GMAC fails to file a report, the court will

estimate the amount received on a sale (and the resulting surplus

over the $19,390.25 residual value of the vehicle) by permitting

the debtor by October 22, 2008, to file a copy of a NADA or

similar report (or other evidence) setting forth the wholesale

_____

     [3]   NADA value or Kelly value or some similar valuation
source could be utilized by the debtor.   In the absence of a
report by GMAC as to the amount actually received on a sale, the
debtor is entitled to use whichever reporting service regarding
wholesale value reports the highest wholesale value.

value of the vehicle on or after May 21, 2008.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Chapter 13 Trustee; Stephen A. Hecker, Esq. (counsel for GMAC on its motion for relief from the automatic stay); and:

GMAC
P. Bengtson, Agent
PO Box 130424
Roseville, MN 55113